September 18, 2007

<u>ECF filed, faxed 212 805-7968</u>

Honorable Kenneth M. Karas,
United States District Judge
Southern District of New York

**Re:**   <u>United States v. George Gamboa</u>
          06 Cr. 1112 (KMK)

Your Honor:

  We respectfully submit in support of our application that Your Honor impose a noncustodial sentence on Mr. Gamboa, October 3, 2007.

  Mr. Gamboa and I have reviewed together the presentence report. He does not contest any of its historical contents nor do we dispute the accuracy of the Guidelines computation. The difference between the Government's <u>Pimentel</u> letter (reviewed in relevant part at § 4 B of the PSR) which calculates the range as 0-6 months and the PSR itself which calculates it at 4-10 months is based on Mr. Gamboa's July 11, 2007, conviction which postdates the preparation of the <u>Pimentel</u> letter.

  Mr. Gamboa is almost 50 years of age and although his prior arrests are significant in number, none involved violence or weapons or sale or attempted sale of controlled substances. His only prior felony consists of aggravated unlicensed operation of a motor vehicle in 1995. The rest of his prior record consists of extremely minor offenses. Two of these priors were not even crimes but mere violations under the New York State penal law: disorderly conduct and harassment.

  The subsidized apartment which is the subject of this case nominally belongs to Mr. Gamboa's mother who is permanently disabled and has lived a few years now in a nursing home. Mr. Gamboa occupied that apartment when it became clear that his mother would more likely than not be unable to come back home and live alone. He came to live there in part in order to take his mother there on weekends in a wheelchair and partly because of serious tensions between himself and his 23-year-old stepson who lives with Mr. Gamboa's wife elsewhere. Mr. Gamboa took the periodic subsidy recertification forms to his mother who signed them following which he filed them, at first not disclosing his own income.

  As shown in §26, PSR, Mr. Gamboa informed the authorities in July 2006, that he no longer wished the apartment to be subsidized. This occurred some four months before his November 2006 arrest. Remarkably, and tragically, notwithstanding HUD's knowledge that the apartment should not have been subsidized these past few years and knowing that Mr. Gamboa had been arrested on these charges and had admitted his criminal conduct, that agency is continuing to subsidize the apartment – or so we reasonably infer– because Mr. Gamboa still

Honorable Kenneth M. Karas,    September 18, 2007
United States District Judge    Page 2

**Re:**   <u>United States v. George Gamboa</u>
      06 Cr. 1112 (KMK)

occupies it and informed us as recently as this week that he personally pays $100 a month rent on the apartment in question. It follows therefore that HUD is continuing the subsidy! We point this out at the risk that Your Honor might see the "loss amount" as greater than suggested by the government and the probation department. We believe however that this would be unfair to Mr. Gamboa since it would appear in this connection that governmental bureaucracy is entirely at fault for the continuing subsidy.

  Mr. Gamboa is a poorly educated basically unskilled man whose very first real, documentable, documented job of any substance is the one he holds now and has held these past three years. He is a maintenance worker working full time earning $1600 monthly (§ 85PSR). Out of that meager but steady income, he subsists and contributes substantially to his family.

  Mr. Gamboa relies on the job financially but perhaps more importantly, he relies on it as his first belated entry into the mainstream, dignified, taxpaying member of society. In a very real and poignant sense, this job which he has held several years now and fervently hopes to keep, is a rite of passage for him. That job is not just another modest or menial one, for Mr. Gamboa is not only financial security but self-esteem, dignity and the respect of others.

  The consequences of a custodial sentence in this case (loss of job) would cause Mr. Gamboa to sink back into the unproductive, depressing life he had led so long. A probationary sentence, on the other hand, would ensure that Mr. Gamboa would be supervised, led to substance abuse monitoring and guidance and perhaps even led to better paying vocational training.

  I will not here discuss the law of sentencing since Your Honor knows it better than I do except to note that Sentencing Guidelines ranges are not presumptively reasonable. That being the case one waits impatiently for the Probation Department and the government to recognize this and to stop acting as though a presumption of reasonableness was always reasonable.

  Accordingly, we respectfully suggest that Your Honor impose a non-guideline sentence of probation with all the conditions that are appropriate and would be desirable in this case.

            Respectfully,

            Roland Thau,
            Staff Attorney
            Tel.: (212) 417-8733

cc: Loyaan A. Egal, Esq., AUSA
  By fax 212 647-2527